**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| EMMANUEL TURNER,<br>**Special Administrator for the**<br>**Estate of LAVERA TURNER**<br>**SCOTT, Deceased,**<br><br>        **Plaintiff,**<br><br>    **v.**<br><br>**COOK COUNTY SHERIFF'S OFFICE,**<br>**by and through COOK COUNTY**<br>**SHERIFF THOMAS DART, in his**<br>**official capacity,**<br><br>        **Defendants.** | **Case No. 19 CV 5441**<br><br>**Judge Harry D. Leinenweber** |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Sheriff Thomas Dart moves to dismiss Plaintiff's Amended Complaint (Dkt. No. 8) pursuant to Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6) (Dkt. No. 13). For the reasons stated herein, the Motion is denied.

## I.  <u>BACKGROUND</u>

On February 13, 2019, police arrested Lavera Turner Scott and subsequently hospitalized her for drug-related reasons. (Am. Compl. ¶ 8, Dkt. No. 8.) The next day, police transferred Ms. Scott to Cook County Jail (the "Jail"), where she stayed as an inmate. (*Id.*) On March 2, 2019, Ms. Scott's cellmate called for Jail staff because Ms. Scott "was in distress." (*Id.* ¶ 11.) Ms. Scott exhibited physical symptoms of an overdose for an extended period before Jail staff called 911. (*Id.*) Eventually, a physician

pronounced Ms. Scott dead over the phone. (*Id.*) The Cook County Medical Examiner determined that the cause of death was an overdose caused by fentanyl and acetyl fentanyl. (*Id.*) During this incident, Jail staff never administered medical treatment or life-saving aid to Ms. Scott. (*Id.*) A representative from Cook County Sheriff's Office made a public statement indicating that Ms. Scott's death was likely the result of drugs smuggled into the Jail because of Sheriff Dart's "decision to stop performing strip searches on inmates due to fear of litigation and lawsuits." (*Id.* ¶ 13.)

The Jail has a record of overdoses. (*Id.* ¶ 14.) In 2017, several other Jail inmates overdosed, and, as a result, at least three inmates died. (*Id.*) In one such incident, an inmate smuggled heroin into the Jail by hiding it in his genitals. (*Id.*) The heroin went undetected during intake because the Sheriff suspended strip searches. (*Id.*) The inmate then distributed the drugs to three other inmates, resulting in their overdoses. (*Id.*) In 2014, two inmates died from overdoses—one from methadone and the other from alcohol. (*Id.*) In 2012, another inmate died from a cocaine overdose. (*Id.*)

On October 24, 2019, Plaintiff Emmanuel Turner, as special administrator for Ms. Scott's estate, filed an Amended Complaint alleging negligence, wrongful death, and deliberate indifference to Ms. Scott's serious medical needs under 42 U.S.C. § 1983, citing

the Eighth and Fourteenth Amendments, against Cook County Sheriff's Office by and through Cook County Sheriff Dart. (Dkt. No. 8.) On November 21, 2019, Sheriff Dart filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. No. 13.)

## II. <u>LEGAL STANDARD</u>

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court will accept all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor. *Marshall-Mosby v. Corp. Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). "If it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Alper v. Altheimer & Gray*, 257 F.3d 680, 684 (7th Cir. 2001) (citations omitted).

# III.  DISCUSSION

## A.  42 U.S.C. § 1983 Claims

Section 1983 permits lawsuits against the government and government officials for civil rights violations. *See* 42 U.S.C. § 1983. The statute applies when someone acting "under color of law" deprives a person of their constitutional or federal statutory rights. *See id.* Here, Plaintiff asserts a § 1983 claim of deliberate indifference to Ms. Scott's serious medical needs in violation of the Eighth and Fourteenth Amendments.

As an initial matter, Plaintiff cannot assert a § 1983 claim under the Eighth Amendment. At the time of the alleged constitutional violations, Ms. Scott was a pretrial detainee. Because the state cannot punish pretrial detainees as that term is used in the Eighth Amendment's prohibition against cruel and unusual punishment, the Due Process Clause of the Fourteenth Amendment protects a pretrial detainee's constitutional rights. *Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (finding the Eighth Amendment's prohibition against cruel and unusual punishment protects only convicted prisoners' constitutional rights); *see also Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 259 (7th Cir. 1996) (noting that the due process rights of a pretrial detainee "are at least as great as the Eighth Amendment protection available to a

convicted prisoner"). Therefore, Plaintiff's claims arise under the Fourteenth Amendment, not the Eighth Amendment.

"Pretrial detainees, who are protected by the Due Process Clause, will state a claim for inadequate medical treatment if they allege deliberate indifference to their serious medical needs." *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995) (internal quotations and citations omitted). "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but intentionally or recklessly disregards that risk." *Phillips v. Sheriff of Cook County*, 828 F.3d 541, 554 (7th Cir. 2016). The Seventh Circuit has identified two categories of deliberate indifference claims in the medical treatment context:

> First, there are claims of isolated instances of indifference to a particular inmate's medical needs. For these claims, a plaintiff must show that he suffered from an objectively serious medical condition and that the defendant was deliberately indifferent to that condition. Second, there are claims that systemic deficiencies at the prison's health care facility rendered the medical treatment constitutionally inadequate for all inmates. For these claims, plaintiffs must demonstrate that there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care.

*Id.* (internal citations and quotations omitted). Plaintiff's Amended Complaint alleges both categories of deliberate indifference against Sheriff Dart.

A government actor like Sheriff Dart can be sued in two ways: his official capacity or his individual capacity. An official capacity suit is generally brought against a high-ranking official as a means of challenging an unconstitutional policy, practice, or custom. *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991); *see also Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("[A]n official capacity suit is another way of pleading an action against an entity of which the [official] is an agent.") (citations omitted). Comparatively, an individual capacity suit requires a showing of personal involvement by the government actor. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

Plaintiff alleges that Sheriff Dart, individually and officially, was deliberately indifferent to Ms. Scott's serious medical needs. Sheriff Dart argues that these allegations should be dismissed for failure to state a claim. Although Plaintiff conflates the individual and official capacity claims in the Amended Complaint, the Court addresses them separately below.

## 1. Official Liability

"As an Illinois sheriff, [Dart] has final policymaking authority over [J]ail operations." *Miranda v. Cty. of Lake*, 900 F.3d 335, 344 (7th Cir. 2018). Therefore, he is the proper party for an official liability claim alleging policies "that deprive inmates of their federal rights." *Id.* Such a suit is permissible under § 1983, but only when a governmental policy or custom was "the moving force" behind the alleged constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). There are three kinds of policies or customs: "[1] an express policy, [2] a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or [3] through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012).

To establish liability for a harmful custom or practice, a plaintiff must show that a defendant was "deliberately indifferent as to [the] known or obvious consequences." *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002). This requires a showing that a defendant had notice of a substantial risk of serious harm to the plaintiff and had no policies or inadequate policies to prevent the plaintiff's injury. *See, e.g., Butera v. Cottey*, 285

F.3d 601, 605 (7th Cir. 2002) ("[I]f the Sheriff had notice of a substantial risk of serious harm to [plaintiff] . . . and he devised no policies or devised inadequate policies to attempt to prevent the assault, he would be 'deliberately indifferent' and [plaintiff] would prevail"). "[I]n situations where rules or regulations are required to remedy a potentially dangerous practice, the [sheriff's] failure to make a policy is also actionable." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

The Seventh Circuit has not "adopt[ed] any bright-line rules defining a 'widespread custom or practice.'" *Id.* In fact, "there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three." *Id.* (internal quotations and citations omitted). A plaintiff must sufficiently allege a policy as opposed to a random event. *Id.* At this stage, the Court finds that Plaintiff has met that burden.

The Amended Complaint alleges that Jail inmates regularly overdose because of inadequate or nonexistent policies that allow inmates easy and frequent access to drugs. Plaintiff alleges that these policies were the moving force behind the violation of Ms. Scott's constitutional right to be free from deliberate indifference to her drug overdose and ultimate death. In support,

Plaintiff cites several inmate overdoses, many occurring within the past five years. Plaintiff also alleges that "top policymakers" in Cook County publicly acknowledged the problem, cited failures in policy, and were aware of the substantial risk these failures posed to inmates. (Am. Compl. ¶ 15; *see also id.* ¶ 13.) According to Plaintiff, Sheriff Dart knew about the problem and the inmate risk, yet he did nothing. (*Id.* ¶¶ 15–17.)

Plaintiff's Amended Complaint also claims failure to train and supervise Jail staff to screen for drugs and to appropriately respond to drug overdoses. There are limited circumstances in which a failure to train claim will be characterized as a "policy" under § 1983 and *Monell*. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A failure to train or supervise claim is actionable only if the failure amounted to deliberate indifference to the rights of others. *Id.* In this context, deliberate indifference exists where: (1) the defendant failed to provide adequate training considering foreseeable consequences; or (2) failed to act in response to repeated complaints of constitutional violations by its officers. *Miranda*, 900 F.3d at 345 (quotations and citations omitted). Basically, "the defendant must have actual or constructive notice of a problem." *Id.*

Although Plaintiff arguably alleges other constitutional violations in the form of overdoses and Jail suicides, Plaintiff

does not plead any examples of repeated complaints related to those incidents. Thus, Plaintiff pleads only the first kind of failure to train claim. Specifically, Plaintiff alleges that the Jail was aware of, and publicly acknowledged, a persistent drug smuggling problem that resulted in several inmate overdoses and deaths. Yet, the Amended Complaint alleges that Sheriff Dart failed to adequately train Jail staff on drug screening methods, inmate supervision, drug treatment, and drug overdose response. These allegations are sufficient to establish notice of the problem, its consequences, and a failure to act.

Sheriff Dart argues that Plaintiff's allegations are insufficient because the Amended Complaint details one example of drug smuggling, mentions instances where Jail staff administered overdose antidotes, and discusses unrelated cases of overdose from alcohol and legally obtained medication. These arguments quibble with red herring factual details and fail to address Plaintiff's overarching allegations—that inmate overdoses regularly occur, Sheriff Dart and Jail staff know that, the Jail's policies (if they exist) do not adequately address the problem, Jail staff are not appropriately trained or supervised as to drug screening or overdose treatment, and because of all that, Ms. Scott overdosed and died. Sheriff Dart's arguments might be more well-received on

a motion for summary judgment, but the Court finds them lacking here.

At this stage, the Court takes Plaintiff's allegations as true and draws all reasonable inferences in Plaintiff's favor. *Iqbal*, 556 U.S. at 678. Under this standard, the Amended Complaint contains sufficient allegations to put Sheriff Dart on notice of the bases for Plaintiff's official liability claims.

## 2. Individual Liability

Because § 1983 creates a cause of action based on personal liability and predicated upon fault, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). There is no *respondeat superior* liability under § 1983, so the mere fact that a sheriff is a supervisor is insufficient to impart liability, even if he was negligent. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *see Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) ("supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable"). Thus, a high level official normally cannot be held liable for "clearly localized, non-systemic violations." *Antonelli v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996).

Nevertheless, high level officials "can be expected to have personal responsibility" for systemic conditions. *Id.* at 1429. An individual may be "personally responsible for the deprivation of a constitutional right" because "he directed the conduct causing the constitutional violation, or it occurred with his knowledge or consent." *Sanville*, 266 F.3d at 740. This means that supervisors may be liable if they "know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Jones*, 856 F.2d at 992. An individual does not have to participate directly in the deprivation, but they must have acquiesced in some demonstrable way to the alleged constitutional violation. *Sanville*, 266 F.3d at 740. In this manner, supervisors may be held liable under § 1983 for deliberate, reckless indifference to the misconduct of their subordinates. *Id.*

The core of Plaintiff's Amended Complaint is that Ms. Scott's overdose—and several other inmate overdoses—occurred as a result of constitutionally inadequate or nonexistent policies instituted under Sheriff Dart's direction, with his knowledge, and with his approval. These policies resulted in Jail employees' deliberate indifference to Ms. Scott's serious medical needs and those of other Jail inmates. Plaintiff specifically alleges that Sheriff Dart "had actual prior notice of the risk posed to inmates of drug overdoses due to the ease with which drugs are smuggled into the

[ ] Jail." (Am. Compl. ¶ 15.) Plaintiff then alleges that despite having:

> actual knowledge of the problem of drugs being smuggled into the [J]ail on a frequent basis, that it posed risk to inmates of drug overdose generally, and posed a risk to [Ms. Scott] specifically, he did not take any corrective actions to protect inmates from the risk of drug overdose, actually and proximately causing the untimely death of [Ms. Scott].

(*Id.* ¶ 17.) Plaintiff also alleges several specific failures by Sheriff Dart to institute adequate policies for inmate supervision, screening, monitoring, and treatment related to drug smuggling, addiction, and overdose. *See Terry v. Cook Cty. Dept. of Corrs.*, 09-cv-3093, 2010 WL 331720, at *3 (N.D. Ill. Jan. 22, 2010) ("The Court does not see a material difference between a policymaker's failure to correct an unconstitutional policy and a policymaker's establishment of such a policy in the first place.") Plaintiff claims that these failures amounted to deliberate indifference.

Plaintiff's individual claim against Sheriff Dart is not based on any direct involvement in Ms. Scott's overdose, but rather on Sheriff Dart's ineffective—or nonexistent—drug detection and treatment policies that allow inmates easy access to drugs and increase the risk/frequency of drug overdoses. *See Antonelli*, 81 F.3d at 1429 (preserving allegations of systemic violations while dismissing localized violations). Plaintiff's individual capacity

claim against Sheriff Dart is rooted in his alleged failure to implement policies that provide constitutionally adequate healthcare to detainees suffering from drug addiction and overdose. *Terry*, 2010 WL 331720, at *2-*3 (upholding individual liability claim against sheriff related to alleged constitutionally inadequate healthcare policies and procedures). Because of his position, Sheriff Dart had final authority over Jail policies. *Miranda*, 900 F.3d at 344. Therefore, Plaintiff's allegations, if true, sufficiently allege that Sheriff Dart was personally involved in the decision-making that amounted to a violation of Ms. Scott's constitutional right to be free from deliberate indifference to her serious medical needs.

The Amended Complaint, read in the light most favorable to the Plaintiff, alleges systemic constitutional violations by way of Sheriff Dart's Jail policies and practices. Therefore, the Court denies Sheriff Dart's Motion to Dismiss the individual capacity claim.

## B. Illinois Tort Immunity Act

In the Amended Complaint, Plaintiff alleges fifteen-some ways that Sheriff Dart negligently breached certain duties owed to Ms. Scott. Sheriff Dart argues that he is entitled to immunity from these negligence claims pursuant to various provisions of the Illinois Tort Immunity Act. It is Sheriff Dart's burden to prove

immunity. *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 280 (Ill. 2003). And, Plaintiff's right to recovery is barred if Sheriff Dart meets this burden. *Id.*

Plaintiff contends that, to the extent the Illinois Tort Immunity Act applies, a portion of the Counties Code colloquially known as the Sheriff's Statute "trumps" because it is more specific. *See* 55 Ill. Comp. Stat. 5/3-6016 (providing that the sheriff "shall be liable for any neglect or omission of a duty of his or her office when occasioned by a deputy or auxiliary deputy, in the same manner as if his or her own personal neglect or omission.") In response, Sheriff Dart argues that there is no apparent conflict between the statutes. The Illinois Tort Immunity Act provides immunity to government entities and employees for particular kinds of tortious conduct whereas the Sheriff's Statute extends the doctrine of *respondeat superior* to cover all deputies' tortious acts. *Compare* 745 Ill. Comp. Stat. 10/1-101–10/10-101, *with* 55 Ill. Comp. Stat. 5/3-6016.

The Court agrees with Sheriff Dart. There is no apparent conflict between the Sheriff's Statute and the Illinois Tort Immunity Act because, as Sheriff Dart notes, nothing in the Sheriff's Statute affects the specific immunities granted to the Sheriff or his deputies in the Illinois Tort Immunity Act. While the Sheriff's Statute extends liability to the sheriff for all

deputies' tortious acts, the Illinois Tort Immunity Act grants immunity to public employees, sheriff and deputies alike, for specific acts. 745 Ill. Comp. Stat. 10/1-101.1 ("The purpose of this Act is to protect public entities and employees from liability arising from the operation of government.") Accordingly, Plaintiff cannot rely on the Sheriff's Statute to wholly extinguish Sheriff Dart's immunity claims.

The Court will address Sheriff Dart's immunity claims individually, keeping in mind that it is Sheriff Dart's burden to assert immunity under specific Illinois Tort Immunity Act provisions and to prove that they apply here. *Van Meter*, 799 N.E.2d at 280. Sheriff Dart claims immunity under several sections in short measure, assuming applicability with little analysis. The Court addresses the main provisions cited below.

### 1. Sections 4-102 & 4-103

Plaintiff alleges Sheriff Dart and Jail staff were negligent in failing to adequately prevent the unlawful possession and transfer of drugs within the Jail and in failing to adequately monitor inmates. Sheriff Dart claims immunity against these allegations under Sections 4-102 and 4-103 of the Illinois Tort Immunity Act. Section 4-102 provides that there is no liability "for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or

solve crimes, and failure to identify or apprehend criminals." 745 Ill. Comp. Stat. 10/4-102. Section 4-103 provides that there is no liability "for failure to provide sufficient equipment, personnel, supervision or facilities therein. Nothing in this Section requires the periodic inspection of prisoners." 745 Ill. Comp. Stat. 10/4-103.

The Illinois Appellate Court addressed similar immunity claims under these provisions in *Bollinger v. Schneider*, 381 N.E.2d 849, 851 (Ill. App. Ct. 1978). In *Bollinger*, the court explained that "section 4-102 grants public employees immunity for the failure to prevent a crime," while "[s]ection 4-103 involves detention[ ] facilities." *Id.* Ultimately, the court found that the applicable section is the one that is "more specific and is particularly applicable to the relation of the parties." *Id.* Therefore, an injury sustained by the plaintiff "when he was physically and sexually assaulted by other inmates while confined in the juvenile section of the Rock Island County Jail" is governed by § 4-103, not § 4-102. *Id.*

Like the plaintiff in *Bollinger*, Ms. Scott sustained an injury as a Jail inmate. But, unlike *Bollinger*, the allegedly injuring party here is Sheriff Dart, not a third party. Thus, neither provision neatly suits this case. *See White v. City of Chicago*, No. 14 CV 3720, 2016 WL 4270152, at *9 (N.D. Ill. Aug. 15, 2016)

(discussing *Bollinger* and declining to decide whether § 4-102 or § 4-103 immunity applied on a motion to dismiss in case involving inmate injury by a City employee). Neither party identified this issue. Indeed, Sheriff Dart's argument assumes that both immunity provisions apply in these circumstances without any substantive analysis. Absent sturdier support, the Court cannot find that Sheriff Dart is immune under either provision.

## 2. Section 4-105

Plaintiff's Amended Complaint contains several allegations related to Sheriff Dart and Jail staff's failure to treat Ms. Scott's drug addiction and her overdose. (*See, e.g.*, Am. Compl. ¶¶ 18, 24.) Sheriff Dart claims immunity against these allegations under § 4-105, which provides:

> Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care.

745 Ill. Comp. Stat. 10/4-105. As used in this context, willful and wanton conduct is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 Ill. Comp. Stat.

10/1-210. The willful and wanton standard in § 4-105 is substantially the same as the deliberate indifference standard for certain § 1983 claims. *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001). This Court already found Plaintiff sufficiently pleaded that Sheriff Dart and his deputies were deliberately indifferent to Ms. Scott's serious medical needs. Because Sheriff Dart may be found to have acted with deliberate indifference, and thus, willfully and wantonly, he is not entitled to immunity under § 4-105 at this time.

### 3. Section 2-201

Plaintiff makes several allegations that Sheriff Dart negligently failed to implement or change policies to prevent drug smuggling. Plaintiff specifically alleges that the Sheriff chose not to strip search all inmates because of liability concerns. Sheriff Dart claims immunity from these allegations under § 2-201, which provides that, "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 Ill. Comp. Stat. 10/2-201.

Section 2-201 immunity requires that the public employee's actions be "*both* a determination of policy *and* an exercise of discretion." *Van Meter*, 799 N.E.2d at 283 (internal citations

omitted) (emphasis added). Policy decisions are "those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests." *Id.* at 281-82 (internal citations omitted). "Discretionary acts are those which are *unique to a particular public office* while ministerial acts are those which a person performs on a given state of facts in a *prescribed manner, in obedience to the mandate of legal authority*, and without reference to the official's discretion as to the propriety of the act." *Id.* (internal citations omitted). Whether an action is discretionary or ministerial "resists precise formulation and . . . must be made on a case-by-case basis." *Snyder v. Curran Twp.*, 657 N.E.2d 988, 993-94 (Ill. 1995).

Plaintiff and Sheriff Dart disagree as to whether the performance of a strip search is discretionary. The relevant provision from the Illinois Administrative Code provides:

> 1) A strip search shall be performed in an area that ensures privacy and dignity of the individual. The individual shall not be exposed to the view of others who are not specifically involved in the process.
>
> 2) Strip searches shall be conducted by a person of the same sex.
>
> 3) All personal clothing shall be carefully searched for contraband.

4) The probing of body cavities may not be done except where there is reasonable suspicion of contraband. Intrusive searches may only be conducted:

A) By a medically trained person who is not a detainee, for example, a physician, physician's assistant, registered nurse, licensed practical nurse, or paramedic; and

B) In a private location under sanitary conditions.

20 Ill. Adm. Code § 701.40(f). Plaintiff argues that strip searches are ministerial because this provision requires them upon admission to the Jail. Sheriff Dart contends that strip searches are discretionary because this provision addresses the method of conducting strip searches without a performance mandate, leaving the timing and frequency of such searches to the Sheriff's discretion.

This disagreement is unsurprising. The Seventh Circuit has said that either reading is possible—construing the "regulation as if it said '[a] strip search shall be performed' and the sentence stopped there" versus reading "the language as a requirement that strip searches, *if* performed, 'shall be performed in an area that ensures privacy and dignity' (and so on)." *Mercado v. Dart*, 604 F.3d 360, 364–65 (7th Cir. 2010); *see also Snyder v. King*, 745 F.3d 242, 249 n.3 (7th Cir. 2014) (providing *Mercado*'s § 701.40(f) discussion as an example in distinguishable municipal discretion

analysis). The parties dedicated very little analysis to this issue, shedding minimal light on the correct interpretation. Thus, the Court declines to declare Sheriff Dart immune under this provision on this Motion to Dismiss.

### C.  Wrongful Death Claim

Finally, Plaintiff asserts a wrongful death claim under the Illinois Wrongful Death Act, 740 Ill. Comp. Stat. 180/1–/2.2. This Act provides an independent cause of action for damages arising from a decedent's death caused by a wrongful act, neglect, or default. *See* 740 Ill. Comp. Stat. 180/1. A party can only be held liable for wrongful death if that party would have been liable for the injuries if there was no death. *Id.* Here, Plaintiff's wrongful death claim survives only if the negligence claims that give rise to it remain viable. Because the Court finds that Plaintiff's Amended Complaint states valid negligence claims and that Sheriff Dart is not entitled to immunity at this time, Plaintiff's wrongful death claim survives.

### IV.  <u>CONCLUSION</u>

For the foregoing reasons, Sheriff Dart's motion to dismiss under FED. R. CIV. P. 12(b)(6) (Dkt. No. 13) is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated:   3/11/2020